**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| NORMA EGAN and JOSEPH EGAN,<br><br>    Plaintiffs,<br><br>v.<br><br>X-MODE SOCIAL, INC.,<br><br>    Defendant. | CASE NO. 1:24-cv-01052 (MSN/WEF) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT X-MODE SOCIAL, INC.'S**
**MOTION TO STRIKE IMMATERIAL ALLEGATIONS**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 3 |
| | A. | *Life360* Litigation | 3 |
| | B. | *X-Mode* Massachusetts Litigation | 3 |
| | C. | Communications with Ms. Egan's Counsel | 5 |
| | D. | *X-Mode* Virginia Litigation | 7 |
| III. | LEGAL STANDARD | | 8 |
| IV. | ARGUMENT | | 8 |
| V. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cummings v. GEO Grp., Inc.*,
  2024 WL 250794 (E.D. Va. Jan. 23, 2024) ................................................................................8

*Fischer v. Fort Belvoir Residential Communities LLC*,
  2023 WL 5352297 (E.D. Va. Aug. 21, 2023)........................................................................8, 10

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023)......................................................................................9

*Gregory v. Belfor USA Grp., Inc.*,
  2012 WL 2309054 (E.D. Va. June 15, 2012) ............................................................................8

*Hicks v. Alarm.com Inc.*,
  2020 WL 9261758 (E.D. Va. Aug. 6, 2020)............................................................................10

*Jalbert v. SEC*,
  945 F.3d 587 (1st Cir. 2019)......................................................................................................8

*Karpov v. Karpov*,
  307 F.R.D. 345 (D. Del. 2015) ................................................................................................10

*Meth v. Natus Med. Inc.*,
  2014 WL 3544989 (E.D. Va. July 17, 2014).............................................................................8

*Renken v. Builders Transp. Co.*,
  2010 WL 11450502 (D. Wyo. Aug. 23, 2010) ........................................................................10

*Rodriguez v. Pol'y Stud., Inc.*,
  2008 WL 11470817 (S.D. Fla. Apr. 4, 2008) ..........................................................................10

*Triantos v. Guaetta & Benson, LLC*,
  91 F.4th 556 (1st Cir. 2024).......................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 12(f).....................................................................................................................2, 8

For the reasons explained in Defendant X-Mode, Inc.'s contemporaneously filed Motion to Dismiss, this case should be dismissed. But if it is not, and some portion of the case proceeds, certain allegations in the Complaint should be stricken at the outset. Not only are they irrelevant on the face of the Complaint, but they are knowingly false as to these Plaintiffs and their claims. As such, they should be stricken under Federal Rule of Civil Procedure 12(f).

**I.     INTRODUCTION**

This is Plaintiff Norma Egan's third complaint against X-Mode raising allegations that she and her attorneys know are inapplicable to her case. On July 25, 2023, Bursor & Fisher, P.A. filed a complaint on Ms. Egan's behalf against X-Mode in the District of Massachusetts. Ex. 1, *Egan v. X-Mode Social, Inc.*, Case No. 1:23-cv-11651, ECF No. 1 (D. Mass.) ("D. Mass. Litigation"). The complaint alleged that X-Mode, a data broker, violated Massachusetts law by allegedly tracking Ms. Egan's location, and selling the resulting data, using "spyware" known as an "SDK"[1] through an app on her phone. *Id.* ¶¶ 1, 12. Ms. Egan and her attorneys repeated these spyware allegations in an amended complaint, in opposition to X-Mode's motion to dismiss, and at oral argument. The entire case, in other words, was based on the premise that X-Mode hid "spyware" in mobile devices to track app users' locations.

In reality, Ms. Egan's app—whose identity her attorneys have intentionally omitted from all three complaints—has never used an X-Mode SDK. Her lawyers know that. As Bursor & Fisher publicly alleged in a lawsuit against the app itself, the Life360 app unilaterally collects and sells its users' location data directly from its own servers, without the use of any SDK. *See* Ex. 2, *E.S. v. Life360 Inc.*, Case No. 3:23-cv-00168 (N.D. Cal.), Compl. ¶ 35 (Jan. 12, 2023) ("*Life360* Litigation") ("Many app-users look for data brokers' code in apps for signs of an app sending data

---

[1]     SDK stands for "software development kit" and is a "piece of software code that any mobile application … can integrate with their software" to "[e]arn passive revenue." *Id.* ¶¶ 12, 15.

off to third parties. However, *Life360 collects its data directly from the app* and provides it to data brokers through its own servers.").[2] Plaintiff's "spyware" allegations against X-Mode were thus inaccurate and intentionally misleading: rather than "r[unning] its spyware through the application on Plaintiff's phone," as alleged, D. Mass. Litigation, Opp. to Mot. To Dismiss, ECF No. 34, Ex. 3 at 5, X-Mode was merely a downstream purchaser of data that her app collected and shared with her consent.

Upon learning the truth regarding the unnamed "App," undersigned counsel questioned Bursor & Fisher about the unfounded inclusion of spyware and SDK allegations, and gave them numerous opportunities to correct the record and withdraw them. But they refused. Following the dismissal of Ms. Egan's Massachusetts lawsuit, her lawyers have refiled the case in this Court on behalf of Plaintiffs Norma and Joseph Egan (presumably a relative). Compl., ECF No. 1. Rather than risk further Rule 11 and ethical violations by continuing to allege that X-Mode installed "spyware" on Plaintiffs' phones, the new Complaint carefully avoids any allegation that Plaintiffs were harmed by an SDK. But the Complaint remains replete with "spyware" allegations, and it continues to omit the name of Plaintiffs' App to obscure the fact that those allegations do not apply. *See id*. ¶¶ 14–24, 28–29. Pursuant to Rule 12(f), Plaintiffs' "spyware" allegations should be stricken because they are immaterial, impertinent, and prejudicial. *See* Fed. R. Civ. P. 12(f). Having already defended itself at considerable expense against Plaintiffs' untruthful and irrelevant allegations in Massachusetts, X-Mode should not again have to defend itself, or engage in discovery, on allegations that Plaintiffs and her lawyers *know* do not apply.

---

[2] Unless otherwise noted, all emphasis in this Motion has been added, and all internal quotations, citations, and alterations have been omitted.

2

## II.     BACKGROUND

### A.     *Life360* Litigation

In January 2023, Bursor & Fisher filed a lawsuit against a mobile device application called Life360 Inc. *See* Ex. 2. They described Life360 as a "popular family safety app marketed as a great way for parents to track their children's movements using their cellphones," and alleged that Life360 had unjustly enriched itself by selling its users' location data to third parties without consent. *Id.* ¶¶ 1, 10; *see also id.* ¶ 16 ("Data brokers that have purchased location data from Defendant include Safegraph, Arity, Cuebiq, and X-Mode."). In support of the allegation that Life360 failed to inform users of its intentions, the complaint alleged that Life360 specifically evaded detection by collecting data directly from the app without the use of an SDK:

> Many app-users look for data brokers' code in apps for signs of an app sending data off to third parties. ***However, Life360 collects its data directly from the app and provides it to data brokers through its own servers***. This makes it especially difficult for Users to determine that Life360 sells location data to third parties since Apple's and Google's app stores have no way of detecting this transfer of location data to a third party.

*Id.* ¶ 35. On April 27, 2023, the *Life360* parties jointly moved for a stay of proceedings to "explor[e] early resolution." *Life360* Litigation, ECF No. 19. Bursor & Fisher voluntarily dismissed the complaint against Life360 with prejudice on November 3, 2023.

### B.     *X-Mode* Massachusetts Litigation

While it explored resolution with Life360, Bursor & Fisher sued other entities including X-Mode. In contrast to the *Life360* litigation, which alleged that Life360 engaged in server-to-serve sales of its users' data, these later lawsuits turned on the use of SDKs. *See* Ex. 1 ¶ 1 (alleging X-Mode acquired "geolocation data and other data through the use of spyware called XDK..."); *Proskin v. Foursquare Labs, Inc.*, Case No. 3:23-cv-30078, ECF No. 1 (D. Mass. July 24, 2023) ("Foursquare collects location data from cell phones by using spyware called Movement SDK…");

3

*Egan v. Cuebiq, Inc.*, Case No. 1:23-cv-11650, ECF No. 1 (D. Mass July 25, 2023) ("Cuebiq violates state law by first acquiring and tracking consumers' precise geolocation data and other data using spyware, and then profiting from that data by selling it to others.").

X-Mode moved to dismiss Ms. Egan's complaint for lack of standing, lack of personal jurisdiction, improper venue, and failure to state a claim. ***Every*** argument in Ms. Egan's opposition turned on X-Mode's alleged use of "spyware" on her phone:

- Introduction

    o "Plaintiff Norma Egan is a resident of Massachusetts who, in or around January 2021, downloaded a third-party phone application ***which surreptitiously ran Defendant's spyware, XDK***." Ex. 3 at 2 (citing Ex. 4 {D. Mass. Litigation, Am. Compl., ECF No. 26} ¶ 14).

- Personal Jurisdiction

    o "Plaintiff's claims arise out of Defendant's forum-based activities, namely tracking 'precise geolocation data and other data ***through the use of spyware*** … and then profiting from that data by selling it to others.'" Ex. 3 at 5 (citing Ex. 4 ¶ 2).

    o "Plaintiff's conduct was not 'unilateral' because ***once Plaintiff downloaded the application, Defendant ran its spyware through the application on Plaintiff's phone***, tracked Plaintiff's location in Massachusetts, and then sold her Massachusetts-based location data on the open market. This establishes forum-based activity by Defendant warranting exercise of personal jurisdiction." Ex. 3 at 5.

    o "X-Mode's conduct is different than a plaintiff passively visiting a website in a forum state (MTD at 6) because ***Defendant actively used spyware on Plaintiff's device***, tracked her location, and sold her Massachusetts-based location data." Ex. 3 at 6 n.3 (citing Ex. 4 ¶¶ 14, 18–28).

- Venue

    o "A substantial part of the events giving rise to the claim occurred in Massachusetts because Plaintiff downloaded the third-party mobile application in Massachusetts, which then triggered, ***through use of spyware, Defendant's tracking of Plaintiff's location*** in Massachusetts and then selling that location data on the open market." Ex. 3 at 8.

- Standing

    o "Even if Plaintiff gave full consent to third-party app developers to collect his data,

4

> consent to that specific conduct does not extend to **Defendant's collection of Plaintiff's data through backdoors built into apps**…." Ex. 3 at 11.

- Failure to State a Claim

    o "Plaintiff alleges a detriment in the form of an interference with her privacy rights resulting first from ***X-Mode's use of spyware to surreptitiously track her movements*** in 'real time,' and then selling that data to others." Ex. 3 at 14 (citing Ex. 4 ¶¶ 1, 9, 23, 28, 29–39).

The court held an in-person hearing on X-Mode's motion to dismiss on February 27, 2024, and dismissed the case for want of personal jurisdiction on May 24, 2024. As confirmed by Plaintiffs' Virginia Complaint, which walk backs their earlier SDK allegations, X-Mode was forced to expend considerable resources defending against false SDK claims in Massachusetts that should never have been filed.

### C. Communications with Ms. Egan's Counsel

Following the Massachusetts hearing but before receiving a decision on its motion to dismiss, X-Mode prepared for the litigation, should it proceed. In researching the scope of discovery in similar lawsuits, undersigned counsel discovered that Ms. Egan's lawyers had sued another defendant under an SDK theory although that app had never used the alleged SDK. *See Proskin v. Foursquare Labs, Inc.*, Case No. 3:23-cv-30078, ECF No. 13 at 1 n.1 ("Uber does not and has never utilized Movement SDK and for that reason alone, the Complaint should be dismissed."). Notably, whereas Bursor & Fisher omitted, and continues to omit, the name of Ms. Egan's app in the X-Mode lawsuits—despite numerous requests to come clean on the name of the underlying app—they did name the app in the *Foursquare* litigation, allowing Foursquare to correct the record at the pleading stage.

On April 2, 2024, undersigned counsel sent Ms. Egan's lawyers a letter. Because Life360 is a family-tracking app like the app allegedly used by Ms. Egan, and because Ms. Egan's lawyers amended her complaint against X-Mode just six days before dismissing their lawsuit against

5

Life360, we asked whether the unnamed app was Life360 or something else. Ex. 5, Apr. 2, 2024 Letter from X-Mode. We explained that Life360 did not use X-Mode's SDK—and that Ms. Egan's lawyers had specifically alleged as much in the *Life360* litigation. *Id*. Accordingly, we asked them either (i) to let us know if the app is **not** Life360, without necessarily identifying the alternate app, or (ii) to promptly withdraw their knowingly false complaint. *Id*. They did not respond.

On May 15, 2024, undersigned counsel called Bursor & Fisher to reiterate our question by phone. They again refused to say whether the app at issue was Life360 or something else, and asserted by email later that day that whether Ms. Egan's app used an SDK was "***not especially relevant*** because the focus of this case is Defendant's unlawful and non-consensual re-sale of geolocation data." Ex. 6, May 2024 Email Exchange. We strongly disagreed. If X-Mode did not "actively use spyware on Plaintiff's device," Ex. 3 at 6—as her lawyers had stated in support of ***every*** argument in the case, requiring very costly briefing and oral argument by counsel for X-Mode—then X-Mode's ***only*** conduct in relation to Ms. Egan was to purchase data from a California app that had obtained her consent to share it, Ex. 4 ¶ 3, eliminating both jurisdiction in Massachusetts and any conceivable causal chain.

Accordingly, we informed Ms. Egan's lawyers that the issue at hand was their "good-faith basis for making specific allegations in Ms. Egan's Complaint and in [their] opposition to X-Mode's motion to dismiss." Ex. 6. We asked again whether the app in the complaint was Life360 or something else, and stated that the continued refusal to answer would confirm that it was indeed Life360. *Id.* They again declined to answer, stating instead that Ms. Egan would provide "all discoverable information in a timely manner during the discovery phase." *Id.* Given three refusals to identify the unnamed app as something other than Life360, we informed Ms. Egan's lawyers that we had their answer and would proceed accordingly. As to the notion that Ms. Egan could

6

rely on knowingly false allegations to avoid dismissal, and to obtain discovery in a later fishing expedition, we noted that "no party is entitled to discovery on a complaint that is based on a false premise." *Id.*

Four days later, the District of Massachusetts dismissed the complaint for want of personal jurisdiction, extinguishing X-Mode's ability to seek relief in that case. *See Triantos v. Guaetta & Benson, LLC*, 91 F.4th 556, 561–62 (1st Cir. 2024) ("Rule 11 sanctions cannot be sought in the precise circumstances of this case: after the court has dismissed the complaint.").

        D.    *X-Mode* **Virginia Litigation**

On June 15, 2024, Bursor & Fisher refiled Ms. Egan's case in the Eastern District of Virginia. As the attached redline demonstrates, and no doubt seeing the writing on the wall for their false "spyware" theory, they were careful to remove any direct allegation that the Egans were harmed or in any way impacted by X-Mode's SDK:

> 2. X-Mode violates state law by first acquiring and/or tracking consumers' precise geolocation data and other data ~~through the use of spyware called "XDK"~~ and then profiting from that data by selling it to others without obtaining consent. The data can include consumers'

> ~~28~~24. Thus, using its spyware, X-Mode monitors, tracks, and identifies consumers in "real time~~;~~." ~~including Plaintiff and other putative class members in Massachusetts.~~

Ex. 7 ¶ 2, 24. But the Complaint is nevertheless replete with SDK allegations, which are still knowingly false as to Plaintiffs and their claims, intentionally misleading (as evidenced by the still-unnamed "App"), and facially irrelevant. *See* Compl. ¶¶ 14–24, 28–29. Plaintiffs'—and particularly their counsel's—pattern of raising "spyware" allegations with full knowledge that Plaintiffs' app did not use X-Mode's SDK is reprehensible.

7

### III. LEGAL STANDARD

A "court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This standard "affords district courts significant discretion in determining whether to strike certain material from pleadings." *Cummings v. GEO Grp., Inc.*, 2024 WL 250794, at *2 (E.D. Va. Jan. 23, 2024). Information is "immaterial" for the purposes of Rule 12(f) "if it has no essential or important relationship to the claim for relief or the defenses being pleaded." *Meth v. Natus Med. Inc.*, 2014 WL 3544989, at *3 (E.D. Va. July 17, 2014). Similarly, information is "impertinent" for Rule 12(f) purposes if it does "not pertain, and is not necessary, to the issues in question." *Cummings*, 2024 WL 250794, at *2. The purpose of a 12(f) motion to strike "is to avoid the expenditure of time and money that may arise from litigating spurious issues by dispensing with those issues prior to trial." *Gregory v. Belfor USA Grp., Inc.*, 2012 WL 2309054, at *1 (E.D. Va. June 15, 2012). That purpose is particularly apt "if the allegations in the complaint will cause prejudice at a later date in the litigation." *Fischer v. Fort Belvoir Residential Communities LLC*, 2023 WL 5352297, at *3 (E.D. Va. Aug. 21, 2023).

### IV. ARGUMENT

As detailed above, the Egans' lawyers knew at the outset of the Massachusetts litigation that the app described in the Complaint did not use X-Mode's SDK. They deliberately omitted the app's name in multiple versions of the complaint to obscure that fact at the pleading stage. And, in so doing, they forced X-Mode to defend against costly litigation based overwhelmingly on assertions that it had run alleged "spyware" on Ms. Egan's phone, knowing those allegations were untrue. *See supra* at 3–5. When confronted with the falsity of their allegations, Ms. Egan's lawyers did not withdraw them, improperly hoping instead to use them to (i) avoid dismissal using a theory they **knew** did not apply to their case, (ii) engage in a discovery fishing expedition into irrelevant allegations, *see Jalbert v. SEC*, 945 F.3d 587, 594 (1st Cir. 2019) ("When a class action

8

is filed, it includes only the claims of the named plaintiff or plaintiffs."), (iii) paint X-Mode in a negative light by continuously referring to SDKs as "spyware," and (iv) enhance their leverage to extract a potential settlement.³

For all the same improper reasons, the Egans and their lawyers continue to assert inapplicable "spyware" and SDK allegations in this litigation, and continue to omit the name of the Egans' app. Given the parties' prior correspondence, there can be no doubt that the app in question is Life360. Nor can there be any doubt the Egans and their lawyers are fully aware that Life360 did not use X-Mode's SDK—a fact that was also eminently discoverable from the outset by examining the Egans' phones. *See, e.g.*, Ex. 2 ¶ 35 ("Many app-users look for data brokers' code in apps for signs of an app sending data off to third parties."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023) (finding plaintiff established standing to sue a data broker in part because he "owns, carries, and regularly uses a cellular device that contains Defendant's Kochava monitoring and intercepting SDK"). Indeed, the Complaint now confirms the irrelevancy of Plaintiffs' "spyware" allegations, having carefully scrubbed any allegation that the Egans' claims arise from the use of X-Mode's SDK.

At bottom, this is litigation against the downstream purchaser of data that was collected and shared unilaterally by an app with its users' permission. *See* Compl. ¶ 3. The Complaint, and any discovery thereon, should reflect that reality. And X-Mode should not, at great expense, be required to defend *again* against extraneous allegations and legal theories that have no bearing on this case—based on knowingly irrelevant allegations. The Complaint's continued assertion of

---

³ Shortly after the hearing on X-Mode's motion to dismiss, Ms. Egan's counsel reached out to ask if we were prepared to mediate. Undersigned counsel responded that mediation would be premature without knowing whether the case was premised on false allegations, and asked whether the app was Life360. *See* Ex. 5. Ms. Egan's lawyers did not respond to the request.

irrelevant allegations, intentional concealment of that fact, and the improper purpose for which those allegations have once again been brought are precisely the kind of tactics that Rule 12(f) is intended to prevent.

Accordingly, if the Complaint survives dismissal, its "SDK," "XDK," and/or "spyware" allegations in Paragraphs 14–24 and 28–29 should be stricken. *See, e.g.*, *Fischer*, 2023 WL 5352297, at *5 (E.D. Va. Aug. 21, 2023) (striking allegation that "**merely serves to prejudice Defendants** by suggesting that they are somehow responsible for events involving entirely different circumstances"); *Hicks v. Alarm.com Inc.*, 2020 WL 9261758, at *3 (E.D. Va. Aug. 6, 2020) ("Rule 12(f) motions allow courts and parties to **avoid unnecessary expense** of time and money on spurious issues by dispensing with them at the pleading stage."); *accord Karpov v. Karpov*, 307 F.R.D. 345, 348 (D. Del. 2015) ("The purpose of a Rule 12(f) motion to strike is to clean up the pleadings, streamline litigation, and **avoid the unnecessary forays into immaterial matters**."); *Renken v. Builders Transp. Co.*, 2010 WL 11450502, at *2 (D. Wyo. Aug. 23, 2010), *aff'd*, 2010 WL 11450503 (D. Wyo. Oct. 18, 2010) ("The purpose of this rule is to **narrow issues for discovery** and trial **by minimizing delay, prejudice, and confusion**."); *Rodriguez v. Pol'y Stud., Inc.*, 2008 WL 11470817 (S.D. Fla. Apr. 4, 2008), report and recommendation adopted, 2008 WL 11470816 (S.D. Fla. May 8, 2008) ("Rule 12(f) … provides a means to **remove unnecessary clutter** from the pleadings and to narrow the scope of litigation.").

### V.     CONCLUSION

For the foregoing reasons, this Court should grant X-Mode's Motion to Strike and grant such further relief as the Court deems proper.

Date: August 16, 2024                              Respectfully submitted,

/s/ Attison L. Barnes, III
Attison L. Barnes, III (Va. Bar No. 30458)
Enbar Toledano (*pro hac vice* pending)
Joel S. Nolette (*pro hac vice* pending)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Fax: (202) 719-7049
abarnes@wiley.law
etoledano@wiley.law
jnolette@wiley.law

*Counsel for Defendant X-Mode Social, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 16th day of August, 2024, I electronically filed foregoing with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record.

Date: August 16, 2024　　　　　　　　　　　　/s/ Attison L. Barnes, III
　　　　　　　　　　　　　　　　　　　　　　Attison L. Barnes, III (Va. Bar No. 30458)